UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT EDWARD MORRIS, | ) |
| Plaintiff, | ) |
| | ) No. 23-cv-3691 |
| v. | ) |
| | ) Judge April M. Perry |
| RANDY MALKOWSKI, WILLIAM BROWN, and "JOHN DOE" Sergeant at Xavier House, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Robert Edward Morris has brought this case against Defendants Randy Malkowski, William Brown, and an unknown Sergeant, all of whom worked at Stateville Correctional Center during the time Plaintiff was incarcerated there. Plaintiff alleges that while he was at Stateville, several fires occurred due to Defendants' failure to maintain appropriate fire safety systems, and Plaintiff suffered injuries as a result. Defendants now move for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies and therefore cannot proceed with this lawsuit.

**BACKGROUND**

On August 7, 2023, Plaintiff filed his complaint against "Major Malkowski," "Lieutenant Brown" and "John Doe Sergeant (or acting sergeant on 1/9/2020)." Doc. 5 at 1.[1] In the complaint, Plaintiff alleges that when first incarcerated in a part of Stateville Correctional Center known as Xavier House, he noticed that the facility lacked fire alarms and fire safety systems like sprinklers. Doc. 5 at 14. Plaintiff further claims that he alerted Defendants to these problems

---

[1] The complaint was split into two separate cases due to improper joinder. Doc. 3. Described herein are only the claims related to case 23-cv-3691.

at the end of December 2019. *Id*. However, on January 8, 2020, Plaintiff alleges that a fire was set and Defendants "ignored [Plaintiff's] complaints and calls for help." *Id*. Another fire was set on January 9, 2020. *Id*. at 15. Again, Plaintiff claims he called for help and no help came. Plaintiff claims that he heard an unknown "security staff" member say to the Acting Sergeant, "let's allow it to burn up a little before we open up the windows." *Id*. Plaintiff alleges that he suffered smoke inhalation and fainted from the effects of the fire and then had to be hospitalized. *Id*. Still, Plaintiff claims that Defendants did not ask for the fire systems to be fixed, and further alleges that it was "rumored" that "Major Malkowski couldn't wait for other fires to happen." *Id*. Ultimately there were three more fires while Plaintiff was in Xavier House which caused him further harm. *Id*. Plaintiff alleges that by failing to fix the fire systems or come to his aid, Defendants acted with deliberate indifference to his safety in violation of the Eighth Amendment.

Plaintiff filed two administrative grievances during his time in Stateville that could arguably apply to his current claims. The first was filed on January 12, 2020 ("January Grievance") and referenced the January 8 and January 9 fires. Doc. 53 at 1-2; Doc. 35-1. The January Grievance names twenty-four individuals, none of whom are Defendants in the current action. Doc. 53 at 2. As for the matters grieved, the vast majority of the January Grievance focused on allegations of mistreatment by medical staff following the fires. Doc. 35-1. Among other matters, Plaintiff complained about his wait time for medical treatment, the uncomfortable nature of the waiting room, being given rushed treatment, being accused of faking his injuries, not receiving proper medical tests, and being sexually assaulted by a nurse. *Id*. at 3-6. With respect to allegations about Xavier House's fire safety practices, the January Grievance does mention that Plaintiff observed a lack of safety equipment at Xavier House but does not allege that Plaintiff told Defendants (or any Stateville staff) about the lack of fire safety equipment in

advance of the fires. To the contrary, it stated that "Once I came back [after the January 8 fire] to X-house I noticed that there wasn't any smoke alarms / detectors." Doc. 35-1 at 4. The January Grievance also does not allege that Defendants (or any Stateville staff) ignored Plaintiff's calls for help during the fires or that Plaintiff heard someone say that they were going to allow the fire to burn before opening windows. The January Grievance mentions "staff officers," "lieutenants," and "security staff officers," and asks that "all staff" in IDOC and Stateville be fired or suspended due to their "wrongful acts" and "unprofessionalism." *Id*. at 5-6. That said, there are no specific complaints about any staff member's refusal to prevent fires or to evacuate inmates during the fires.

Plaintiff's second grievance was filed on July 7, 2020 ("July Grievance"). The July Grievance is two handwritten pages, and unlike the January Grievance specifically alleges that Plaintiff is complaining about "failure to protect and the Stateville administration creating a deliberate indifference with this fire matter." Doc. 35-2 at 2. Specifically, Plaintiff alleges in the July Grievance that "there are no sprinklers, fire extinguishers, and or emergency evacuation plans with staff & or drills that's ran with us incarcerated people." *Id*. Plaintiff references a fire on July 6, 2020, and says that "security staff and medical staff mishandled me during the whole evacuation process." *Id*. at 3. Plaintiff further alleges that "the officers whom mishandled me were the ones whose not 'regulars' in the X-House and some Tact Team." *Id*. Plaintiff complains about being handcuffed as he was removed from the cell, having water put in his face to wake him up, and being removed from his cell rolled in a blanket. *Id*. The July Grievance names twelve individuals, none of whom are Defendants in this action. Doc. 53 at 3. Similar to the January Grievance, the July Grievance does not allege that Plaintiff told anyone at Stateville

about his concerns with respect to fire systems, that Plaintiff called for help during a fire and no one came, or that someone purposefully allowed a fire to continue burning.

After the initial determination on his July Grievance was unfavorable, Plaintiff appealed to the Administrative Review Board ("ARB"). Doc. 53 at 4. A custodian of records for the ARB has submitted an affidavit stating that a Return of Grievance form for the July Grievance was sent to Plaintiff because his appeal was missing required documents. Doc. 35-3 at 5. Plaintiff never resubmitted the July Grievance appeal with the proper documentation. Doc. 53 at 4.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A dispute as to material facts is genuine, and summary judgment will be denied, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); FED. R. CIV. P. 56(c). Ultimately, however, the party who bears the burden of proof on any issue may not rest on the pleadings and must affirmatively present some evidence to support its claims. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Even "self-serving" testimony from the non-moving party, if "based on personal knowledge or firsthand experience," can be "evidence of disputed material facts." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## ANALYSIS

Defendants argue that Plaintiff's lawsuit cannot proceed because he did not properly exhaust his administrative remedies through the Illinois Department of Corrections ("IDOC") as is required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to give "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). To have exhausted administrative remedies, a plaintiff must grieve his claim through "all steps that the agency holds out," and must "do[] so *properly* (so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original).

Prisoners in the custody of IDOC must file grievances on specific forms and include "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If the names of the perpetrators are unknown, then the prisoner "must include as much descriptive information about the individual as possible." *Id*.

Once a grievance has been filed, it is evaluated by a Grievance Officer who reports his or her findings and provides recommendations to the Chief Administrative Officer ("CAO"). 20 Ill. Admin. Code § 504.830(a), (e). After review of the report, the CAO then advises the inmate of the CAO's decision in writing. *Id*. If the inmate disagrees with the CAO's decision, the inmate may file a written appeal, along with a copy of the initial report and CAO's decision, to the ARB. *Id*. § 504.850(a). The ARB then reviews the matter and prepares a report for the Director of IDOC. After reviewing the ARB report, the Director makes a final determination on the merits of the grievance. *Id*. § 504.850(d), (e). If the appeal is not properly filed with the ARB because it does not contain all of the necessary documentation, the ARB review does not proceed.

*McDonald v. Henze*, No. 20-cv-643, 2022 WL 279587, at *4 (N.D. Ill. Jan. 31, 2022). Under these circumstances, courts generally hold that the inmate has failed to exhaust his administrative remedies. *See id.*; *Gakuba v. Pannier*, No. 19-cv-1274-NJR, 2021 WL 1165114, at *5 (S.D. Ill. Mar. 26, 2021); *Gibson v. Wexford Health Sources, Inc.*, No. 18-cv-585-JPG, 2020 WL 2769991, at *3 (S.D. Ill. May 28, 2020).

In this case, Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to both the January and July Grievances because neither of Plaintiff's grievances properly named or described any of the Defendants in this action as is required by 20 Ill. Admin. Code § 504.810(c). Defendants further argue that the July Grievance suffers from the additional problem that there was no final decision on the merits because Plaintiff did not respond to the ARB's request for additional information. For the reasons set forth below, the Court agrees that Plaintiff has failed to exhaust his administrative remedies.

First, the Court agrees that neither of Plaintiff's grievances properly identified these Defendants. The January Grievance names twenty-four individuals, none of whom are these Defendants. The July Grievance names twelve individuals, none of whom are these Defendants. In addition to not naming Defendants, neither the January nor July Grievance described Defendants, either in terms of physical appearance or specific role at Stateville. Moreover, while both the January and July Grievances refer generally to Stateville staff, none of those descriptions accuse any specific Stateville staff member of the wrongful acts that Defendants are now alleged to have committed, such as knowing in advance about defective fire safety systems, refusing to fix fire safety systems, or refusing to come to Plaintiff's aid during the fires. The January Grievance is especially bereft of any logical connection to the current claims, given that it complains about numerous problems with the medical staff and specific guards mistreating

Plaintiff and contains only the briefest mention of the fires. The July Grievance at least clearly raises the issue of the fire safety systems and evacuation procedures. But the staff members accused of being at fault there were described as being "not regulars" at Xavier House, whereas these Defendants are the Shift Commander, Lieutenant, and Sergeant of Xavier House. Doc. 5 at 3. The purpose of exhaustion requirements if to give an agency "a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). IDOC did not have such an opportunity here, given that Plaintiff did not put IDOC on notice that these Defendants were believed to have done anything wrong.

   Plaintiff responds that the exhaustion rules require that he only provide as much information about the wrongdoers as possible. He further points to cases which hold that exhaustion may be excused if prison officials have made filing of administrative complaints logistically difficult or have prevented their identities from being discovered. But neither of these circumstances caused the deficiencies in Plaintiff's grievances. Plaintiff was able to file his grievances, he just did not complain in those grievances about the people he is now seeking to sue. Plaintiff's current allegations that Stateville staff prevented inmates from seeing their nametags would be relevant if his only problem was that he did not name Defendants. But Plaintiff's bigger problem is that he did nothing to describe these specific Defendants at all. *See Saucedo v. Illinois Dep't of Corrections*, No. 15-cv-50136, 2017 WL 9517464, at *4 (N.D. Ill. Apr. 11, 2017) ("Plaintiff cannot be faulted for not knowing the names of the individuals involved, but he was still required to describe the individuals in as much detail as possible to alert the administration who he was complaining about."). Plaintiff demonstrated his ability to physically describe Stateville staff when he grieved the actions of "a movement officer (tall bald-

head African American)," Doc. 35-2 at 3, but included no such physical description of these Defendants.

Given that Plaintiff did not name or describe Defendants in his January or July Grievances, summary judgment for failure to exhaust administrative remedies is appropriate. *See, e.g., Lovejoy v. Lashbrook*, No. 20-3277, 2022 WL 10966712, at *2 (7th Cir. 2022) (affirming grant of summary judgment for failure to exhaust administrative remedies where "neither grievance named [the warden] or suggested that [the warden] turned a blind eye to [plaintiff's] medical care"); *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014) (noting that it is a "fatal defect" when a grievance has an "absence of anything in it to indicate that [the defendant] was the target"); *Ambrose v. Godinez*, 510 Fed. Appx. 470, 472 (7th Cir. 2013) (noting that grievance must mention the defendant "by name or inference").

The July Grievance has a second problem: Plaintiff did not grieve all the way through the end of the administrative process. Here, Defendants presented evidence that the ARB sent the July Grievance back to Plaintiff and asked him for further documentation. Defendants further presented evidence that the requested documentation was never provided. Because it did not receive the necessary information, the ARB could not issue a report to the Director of IDOC and there was no final decision on the merits. Plaintiff therefore has not properly completed all steps of the administrative review process. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

To this argument, Plaintiff responds only that Defendants have not proved that Plaintiff received the ARB's letter requesting additional information. Notably, Plaintiff does not provide any affirmative evidence of his own on this point. To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the Court must construe the facts in the

light most favorable to the nonmovant and draw all reasonable inferences in his favor, it is not required to draw inferences supported by only speculation or conjecture. *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013). If Plaintiff did not receive the ARB letter, he had the opportunity to include that fact in his affidavit which he submitted in opposition to summary judgment. *See* Doc. 47-1.[2] Without any such evidence, the Court does not think it a reasonable inference that the ARB letter was sent but not received.[3] Based upon this, the Court believes that Plaintiff has raised only metaphysical doubt as to whether the return of grievance was returned to Plaintiff, which is insufficient to create a genuine dispute of fact.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

Dated: April 10, 2025

_____
APRIL M. PERRY
United States District Judge

---

[2] Given that Plaintiff submitted the ARB return letter as part of his complaint in a related case, the Court commends Plaintiff for not swearing under oath that he did not receive the ARB letter. *See* 22-cv-1375, Doc. 1 at 85.

[3] Defendants submitted as an undisputed fact "Plaintiff's July 7 Grievance was returned to him…". Doc. 53 at 4. Plaintiff responds "Denied," and points out that the form "does not confirm it was returned." But Plaintiff does not himself cite to any evidence in the record that it was not in fact returned. Meanwhile, the underlying document purports to be a "Return of Grievance," Doc. 35-4 at 362, and Defendants have submitted an affidavit stating that the form was sent to Plaintiff, Doc. 35-3 at 5. Under Local Rule 56.1(e)(3), "to dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact."